UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMANTHA NICOLE
CLARK,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

Case No. 4:20-cv-13349
District Judge Matthew F. Leitman
Magistrate Judge Anthony P. Patti

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 14), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 16), and AFFIRM THE COMMISSIONER'S DECISION**

**I.**     **RECOMMENDATION**: For the reasons that follow, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 14), **GRANT** Defendant's motion for summary judgment (ECF No. 16), and **AFFIRM** the Commissioner's decision.

**II.**     **REPORT**

    Plaintiff, Samantha Nicole Clark, brings this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) for review of a final decision of the Commissioner of Social Security (Commissioner) denying her application for Supplemental Security Income (SSI) benefits. This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 14), the Commissioner's cross-motion for summary judgment (ECF No. 16), and the administrative record (ECF No. 11).

### A.     Background and Administrative History

Plaintiff alleges her disability began on July 1, 2018, at the age of 23.  (ECF No. 11, PageID.171.)  She filed an application for Supplemental Security Income (SSI) on December 10, 2018.  (*Id*.)  In her disability report, she lists several conditions (nonepileptic seizures, epilepsy, anxiety, foot pain (both), and vertigo) as limiting her ability to work.  (*Id*., PageID.192.)  Her application was denied on April 3, 2019.  (*Id*., PageID.94-106, 110-118.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (*Id*., PageID.119-121.)  On January 17, 2020, ALJ Dawn M. Gruenburg held a hearing, at which Plaintiff and a vocational expert (VE), Helen Topcik, testified.  (*Id*., PageID.72-93.)  On February 4, 2020, ALJ Gruenburg issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id*., PageID.56-71.)

Plaintiff submitted a request for review of the hearing decision/order.  (*Id*., PageID.168-170.)  However, on November 5, 2020, the Appeals Council denied Plaintiff's request for review.  (*Id*., PageID.45-50.)  Thus, ALJ Gruenburg's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on December 22, 2020 (ECF No. 1.)

### B. Plaintiff's Medical History

The administrative record contains approximately 503 pages of medical records, which were available to the ALJ at the time of her February 4, 2020 decision. (ECF No. 11, PageID.71, 251-753 [Exhibits 1F-10F].) These materials will be discussed in detail, as necessary, below.

### C. The February 4, 2020 Administrative Decision

Pursuant to 20 C.F.R. § 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 20, 2018, the application date (ECF No. 11, PageID.61), although it seems the application was actually filed on December 10, 2018 (*id.*, PageID.141, 148, 171-177). In any event, at **Step 2**, the ALJ found that Plaintiff had the following severe impairments: non-epileptic seizures, epilepsy, anxiety, and history of bunionectomy. (*Id.*, PageID.61.) At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.*, PageID.61-63.)

**Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[1] and determined that Plaintiff had the RFC:

> . . . to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can sit and stand at 1-hour intervals [*i.e., exertional limitations*].  The claimant is unable to climb ladders or stairs at the worksite.  She is able to perform postural activities occasionally but she must avoid all hazards at the work site [*i.e., postural limitations*].  The claimant is capable of simple work on a consistent basis but work must be free from the stresses of a fast-paced production rate or in tandem work [*i.e., limitations on understanding, remembering or applying information and/or concentrating, persisting or maintaining pace*].  The claimant requires a stable job with few, if any, changes in work requirements, or procedures [*i.e., limitations on adapting or managing oneself*].  The work cannot require the claimant to have direct communication with the general public [*i.e., limitations on interacting with others*].

(*Id.*, PageID.63-66.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (*Id.*, PageID.66.)  At **Step 5**, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (*Id.*, PageID.67-68.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since November 20, 2018, the date the application was filed.  (*Id.*, PageID.68.)

    **D.**    **Standard of Review**

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384,

5

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.   Analysis

Plaintiff identifies a single issue in this appeal, namely, whether the "Commissioner erred in finding that Plaintiff's severe impairments of non-epileptic seizures and epilepsy did not meet or equal listing 11.02." (ECF No. 14, PageID. 759, 765.)

#### 1.   Listing 11.02 ("Epilepsy")

Plaintiff argues the ALJ erred by finding that Plaintiff's non-epileptic seizures and epilepsy did not meet or equal listing 11.02. (ECF No. 14, PageID.765-769.) Specifically, Plaintiff challenges "the ALJ's medical equivalence finding[.]" (*Id.*, PageID.766.) The Commissioner opposes Plaintiff's

6

motion, asserting that Plaintiff has not proved she had an impairment that medically equaled the criteria of Listing 11.02. (ECF No. 16, PageID.780-785.) Listing 11.02 provides, in pertinent part:

> **11.02 <u>Epilepsy</u>, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:**
>
> A. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C).
>
> OR
>
> B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C).

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 11.02A, 11.02B.

ALJ Gruenburg found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling one of the Listed impairments, in support of which she cited the State agency opinion – presumably either Mary Stelma, Ph.D's March 26, 2019 opinion (ECF No. 11, PageID.98-100) or Helene Jones, M.D.'s April 3, 2019 RFC assessment (*id.*, PageID.101-103) – and "the updated records . . . ." (ECF No. 11, PageID.61-62.) Then, she stated:

> While the claimant alleges that she meets Listing 11.02 for epilepsy, *the frequency of episodes does not rise to Listing levels*. The claimant reports episodes occurring multiple times per week but the medical records suggest that it is *unclear whether these episodes are seizures or anxiety attacks* (Exhibit 7F, pages 4 and 7 [ECF No. 11, PageID.501, 504] (emphases added)).

7

(*Id.*, PageID.62.)

### a. Medical equivalence

An impairment "is medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). "If the findings related to your impairment(s) are <u>at least of equal medical significance</u> to those of a listed impairment, we will find that your impairment(s) is medically equivalent <u>to the analogous listing</u>." 20 C.F.R. § 416.926(b)(2) (emphases added) While "[t]he Commissioner's regulation allows for variation in the number, type, or severity of the claimant's conditions, so long as the claimant's overall impairment is 'at least of equal medical significance' to a listed impairment[,] 20 C.F.R. § 404.1526(b)(ii)[,]" the regulations "make no provision . . . for claimants whose condition is reasonably found to be sporadic or intermittent." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 784 (6th Cir. 2017), *aff'd sub nom. Biestek v. Berryhill*, 139 S. Ct. 1148 (2019).

"For a claimant to qualify for benefits by showing that h[er] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [s]he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original). Put another way, "[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy

the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004).

> **b.     Type – "Generalized tonic-clonic seizures" (Listings 11.02A, 11.00H1a) or "Dyscognitive seizures" (Listings 11.02B, 11.00H1b)**

Plaintiff contends "[t]he records are unclear as to the definitive cause of Clark's recurring seizure-like episodes." (ECF No. 14, PageID.767.) Given the ALJ's Step 2 finding that Plaintiff's non-epileptic seizures, epilepsy, and anxiety were severe impairments, and the ALJ's acknowledgment that "it is unclear whether these episodes are seizures or anxiety attacks[,]" Plaintiff questions the ALJ's conclusion that "the frequency of episodes does not rise to Listing levels." (*Id.*, PageID.767; ECF No. 11, PageID.61-62.)

It is questionable whether Plaintiff has shown medical equivalence as to generalized tonic-clonic seizures (Listings 11.02A, 11.00H1a) or dyscognitive seizures (Listings 11.02B, 11.00H1b). To be sure, Plaintiff summarizes her medical history by referring to the ALJ's observation that "[t]he medical records support a history of intractable partial epilepsy manifesting as focal impairments awareness seizures and evolving to bilateral convulsive seizures[,]" (ECF No. 11, PageID.64), as well as by citing and describing:

9

- The November 1, 2018 notes from Jules Constantinou, M.D. of Henry Ford Health System (PageID.500-502);

- The November 1, 2018 "Seizures Residual Functional Capacity Questionnaire" – *i.e.*, medical source statement (MSS) – from Dr. Constantinou (*id.*, PageID.336-337);

- The November 11, 2018 emergency/urgent care notes from St. Joseph Mercy – Oakland (*id.*, PageID.508-512); and,

- The November 28, 2018 notes from an electroencephalogram (EEG) at Henry Ford Health System (*id.*, PageID.473).

(ECF No. 14, PageID.760-762.)

However, Plaintiff's actual *argument/statement of error* does not satisfy her burden to overturn the ALJ's Step 3 finding as to Listing 11.02. In this ordinarily critical portion of a brief, Plaintiff's only express administrative record citations are the ALJ's Step 2 and Step 3 findings. (ECF No. 14, PageID.766-769 (citing ECF No. 11, PageID.61-62).) As best the Court can tell, Plaintiff's contention that "notes indicating reported seizures occurring multiple times per week by the [sic] October of 2018[,]" (ECF No. 14, PageID.767), is likely a citation to Dr. Constantinou's November 1, 2018 notes about "an upswing in seizures in 2018[,]" (ECF No. 11, PageID.430, 432, 502, 505), and perhaps also a reference to Dr. Constantinou's same-day MSS (*id.*, PageID.336), each of which was cited in her medical history (ECF No. 14, PageID.762).

Setting aside for the moment the lack of more specific, supporting record citation within Plaintiff's argument, Plaintiff seemingly asks the Court to treat her episodes – whether caused by anxiety or hypertension (*i.e.*, a panic attack) or seizures – as analogous to Listing 11.02A or Listing 11.02B. (ECF No. 14, PageID.767-768.) The Commissioner notes that, "psychogenic nonepileptic seizures and pseudoseizures are not epileptic seizures for the purpose of 11.02. We evaluate psychogenic seizures and pseudoseizures under the mental disorders body system, 12.00." Listing 11.00H1. (ECF No. 16, PageID.782.) As the Commissioner correctly points out and as discussed further below, "Plaintiff does not mention the mental health listings under section 12.00 or challenge the ALJ's findings regarding the mental health listings . . . ." (ECF No. 16, PageID.783-784.)

More to the point, whether Plaintiff's seizures are equivalent to either of the types at issue in this appeal – i.e., Listing 11.00H1a or Listing 11.00H1b – is debatable. Plaintiff's treating neurologist's records twice (August 29, 2017 and November 1, 2018) state that:

> Samantha is also subject to non-epileptic attacks with features of consistent with hyperventilation syndrome, and it is often difficulty [sic] for patients and their families difficult [sic] to distinguish the epileptic from the nonepileptic attacks.
>
> I spoke to Samantha about the nature of nonepileptic attacks. I explained that nonepileptic attacks reflect a subconscious mechanism by which the brain changes mental pressure into physical symptoms. The answer is not more and more seizure medications, but rather teaching the brain new

ways of coping with stress at a conscious level. This can be a [sic] uphill battle, but I am sure that with support and with counseling, Samantha will be able to "take control."

(ECF No. 11, PageID.444, 432, 505.) On the other hand, as referenced above, Dr. Constantinou's November 1, 2018 notes refer to "an upswing in seizures in 2018[,]"[2] and his November 1, 2018 MSS reflects that Plaintiff suffers from generalized, convulsive seizures (*id.*, PageID.336 ¶¶ 4-5).

Nonetheless, in Plaintiff's case, satisfaction of Listing 11.00H1's type requirement is an academic question, because, even if these records from Dr. Constantinou illustrate how Plaintiff's impairment(s) are medically equivalent to Listing 11.02's *type* – *i.e.*, generalized tonic-clonic or dyscognitive (as defined by 11.00H1a or 11.00H1b), Plaintiff's references to these records do not illustrate that her episodes meet or equal Listing 11.02's frequency (as defined by 11.00H4) element, as discussed below.

        **c.**        **Frequency – Listing 11.00H4 ("Counting seizures.")**

---

[2] When noting "an upswing in seizures in 2018[,]" Dr. Constantinou explained: (1) "[t]here were 6 seizures in April, 3 seizures in May, and in October, Samantha has been subject to seizures a few times a week[;]" (2) "[i]ndeed, the family tell me about breakthrough seizures on October 29th, October 30th, and October 31st[;]" (3) "[i]ndeed, seizures have been occurring almost every night in sleep through the month of October[;]" and, (4) "[i]t is difficult to be certain whether or not the attacks reflect predominantly nonepileptic seizures, epileptic seizures or both." (ECF No. 11, PageID.430, 432, 502, 505.)

Even if the Court assumes *arguendo* that the events were equivalent in *type* (Listings 11.00H1a or 11.00H1b) and also concludes that Plaintiff's events were occurring at least once per month or once per week, Plaintiff's apparent citations to Dr. Constantinou's November 1, 2018 notes and/or same-day MSS do not illustrate how, in either Listing 11.02A or Listing 11.02B, Plaintiff's events occurred "for at least 3 consecutive months . . . [,]" consistent with Listing 11.00H4. This is so, even though the November 1, 2018 MSS reflects that Plaintiff's seizures sometimes occur 2 to 5 times per week, with the then-most-recent three having occurred on October 29th, 30th, and 31st. (ECF No. 11, PageID.336 ¶ 7.) If the above-cited records from November 2018 illustrate either *frequency* "for at least 3 consecutive months," Plaintiff's argument does not illustrate how and it is not otherwise apparent to the Court. (ECF No. 14, PageID.766-769.)

          **d.**    **Summation**

Looking beyond the type and frequency requirements of Listing 11.02, it is worth noting that ALJ Gruenburg addressed Plaintiff's seizures and the frequency of episodes within the RFC determination (ECF No. 11, PageID.64-66), including the following statement about Dr. Constantinou's MSS:

> While Dr. Constantinou has been evaluating and treating the claimant over a longitudinal period, the record does not support the frequency of seizure activity described by Dr. Constantinou. Rather, Dr. Constantinou's assessment appears based on the claimant's subjective

13

> reports of the nature and frequency of symptoms. The frequency of 2 – 5 seizures is not substantiated by the medical records or the long-term EEG performed in December 2018.

(*Id.*, PageID.66.) While Plaintiff provides a review of the ALJ's RFC determination (ECF No. 14, PageID.763-764), Plaintiff's argument does not challenge the adequacy of the ALJ's RFC determination – with its various exertional, postural and "Paragraph B" limitations (ECF No. 11, PageID.63-66) – in accounting for her impairments (ECF No. 14, PageID.766-769). Indeed, Plaintiff's narrow statement of error only challenges the ALJ's Step 3 equivalency finding. Thus, given the absence of an articulated challenge to the ALJ's RFC determination, Plaintiff has waived any argument with respect to the adequacy of the RFC.

Finally, although Plaintiff broadly refers to "the objective evidence of record, including treatment notes" and "the opinion of Clark's treating neurologist" as support for a finding of medical equivalency, the Court may limit its consideration of the administrative record to records actually cited by the moving party. (ECF No. 14, PageID.769.) "[A] plaintiff cannot simply claim that the ALJ erred 'while leaving it up to the Court to scour the record to support this claim.'" *Henderson v. Comm'r of Soc. Sec.*, No. CIV. 14-12675, 2015 WL 2063096, at *2 (E.D. Mich. May 4, 2015) (Parker, J.) (quoting *Deguise v. Comm'r of Social Security,* No. 12–10590, 2013 WL 1189967, at *7 (E.D. Mich. Feb.19, 2013)

14

(Hluchaniuk, M.J.), *adopted by* 2013 WL 1187291 (Mar. 22, 2013) (Tarnow, J.)). Accordingly, the Court should affirm the ALJ's Step 3 determination.

### 2.    Waived or undeveloped arguments

#### a.    Anxiety

To the extent Plaintiff admits that her episodes may have been caused by anxiety (ECF No. 11, PageID.767-768), which at Step 2 the ALJ determined was a severe impairment (ECF No. 11, PageID.61), ALJ Gruenburg stated at Step 3, "[t]he severity of [Plaintiff's] mental impairment does not meet or medically equal the criteria of listing 12.04 ["Depressive, bipolar and related disorders"] and 12.06 ["Anxiety and obsessive-compulsive disorders"]." (ECF No. 11, PageID.62.) As the Commissioner correctly points out, "Plaintiff does not mention the mental health listings under section 12.00 or challenge the ALJ's findings regarding the mental health listings . . . ." (ECF No. 16, PageID.783-784.) *See Dakroub v. Comm'r of Soc. Sec.*, No. 15-12484, 2016 WL 5539760, at *9 (E.D. Mich. Aug. 1, 2016) (Morris, M.J.) ("A claimant's failure to specifically detail, in a point-by-point fashion, how he or she meets a listing waives that argument."), *report and recommendation adopted*, No. 15-12484, 2016 WL 5405325 (E.D. Mich. Sept. 28, 2016). Thus, Plaintiff has waived any listings argument related to her anxiety.[3]

---

[3] In any event, the ALJ addressed anxiety and hyperventilation syndrome it in the RFC by providing for simple, low-stress work, with a few changes in requirements or procedures and without interactions with the general public (*id.*, PageID.63, 65).

15

### b. Testimony

Also, Plaintiff states she "appeared and testified at a hearing . . . on January 17, 2020[,]" and within her argument contends her "own testimony" supports "a finding of medical equivalency." (ECF No. 14, PageID.760, 769.) However, if Plaintiff intended these statements as a challenge to the ALJ's statement that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . [,]" (*see id.*, PageID.63, 65, 66), an argument based on 20 C.F.R. § 416.929 and SSR 16-3p is too undeveloped for it to warrant any analysis here. *See McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) ("'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.'") (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n,* 59 F.3d 284, 293–94 (1st Cir.1995) (citation omitted)).

### F. Conclusion

Plaintiff has the burden of proof on her statement(s) of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner

16

only at Step Five."). She has not shown legal error in the ALJ's Step 3 determination. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 14), **GRANT** Defendant's motion for summary judgment (ECF No. 16), and **AFFRIM** the Commissioner of Social Security's decision.

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must precisely recite the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an

17

objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: December 29, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE